O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GOODBREAK, LLC, a California limited liability company, | ) ) ) | Case No. CV 15-03897 DDP (ASx) |
| Plaintiff, | ) ) | **ORDER DENYING PLAINTIFF'S MOTION TO REMAND TO STATE COURT** |
| v. | ) ) | |
| HOOD BY AIR, LLC, a California limited liability company; HOOD BY AIR LICENSING, LLC,a California limited company; HOOD BY AIR, an unknown entity; SHAYNE OLIVER, an individual; LEILAH WEINRAUB, an individual; BEAU WOLLENS, an individual; MELVIN LOH, an individual, | ) ) ) ) ) ) ) ) ) ) ) ) | [Dkt. 11, 18] |
| Defendants. | ) | |

Presently before the court is Plaintiff Goodbreak LLC ("Goodbreak")'s Motion to Remand.  After considering the parties' submissions, the Court DENIES the motion.

**I. Background**

Goodbreak arranges for the manufacture of clothing in China for its clients.  (Complaint, ¶ 18.)  Defendants Hood By Air, LLC and Hood By Air Licensing, LLC (collectively "HBA") sell articles

1  of clothing online and in retail locations.  (Complaint, ¶ 19.)

2  Defendant Shayne Oliver owns, directs, or controls HBA and

3  Defendant Leilah Weinraub is HBA's CEO.  Defendant Wollens is HBA's

4  Director of Operations.  (Id. ¶¶ 6-8.)

5      At a trade show in China, Defendants Oliver and Weinraub

6  informed Goodbreak of the potential to invest in HBA.  (Compl. ¶

7  20.)  Plaintiff traveled to New York City in November 2013 to meet

8  with Defendants to further discuss this opportunity.  (Id.)  At the

9  meeting, Defendants requested that Plaintiff first manufacture

10  clothing for Defendants on a "trial run" basis, before Plaintiff

11  could become an equity investor.  (Id.)  Plaintiff agreed to a

12  lower markup rate (50%) than was customary in order to develop a

13  business relationship with Defendants and preserve the opportunity

14  to invest in HBA.  (Id.)  This agreement was not memorialized.

15  (Id.)

16      Pursuant to the agreement with Defendants, Plaintiff initiated

17  production of various items of clothing for the Defendants.

18  (Compl. ¶ 21.)  Plaintiff requested payment upon delivery, but

19  Defendants instead agreed to pay Plaintiff within 30 days of

20  receiving invoices.  (Id. ¶ 24.)  Defendants were late with their

21  payments on several occasions.  (Id.)

22      The Complaint further alleges that Defendants made

23  unreasonable turn-around demands, frequently giving Plaintiff only

24  two weeks, and once as little as three days, to fulfill

25  manufacturing orders.  (Compl. ¶ 26.)  Due to alleged errors in

26  Defendants' designs, Plaintiff had to re-design several garments to

27  make them capable of being manufactured.  (Id. ¶ 27.)  On these

28

occasions, Plaintiff had to use its own resources to fix errors and pay "rush" fees to the manufacturer.  (<u>Id.</u> at ¶ 27.)

Plaintiff also alleges that Defendants demanded direct access to Plaintiff's manufacturers in China. (Compl. ¶ 28.)  To facilitate that access, Plaintiff helped Defendants obtain Chinese visas so that Defendants could observe production of the clothing. (<u>Id.</u>)  While Defendant Wollen was in China, however, he induced Plaintiff's manufacturer to break its agreement with Plaintiff and deal directly with HBA instead.  (<u>Id.</u> at ¶ 29.)  After Plaintiff discovered this new arrangement, Defendants offered to continue paying Plaintiff the previously agreed upon markup rate, but never actually paid Plaintiff.  (<u>Id.</u>)

Plaintiff filed suit in California state court alleging eight causes of action, including breach of contract, fraud, intentional interference with contractual relations, and unfair business practices.  Defendant removed the action to this Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332. (Notice of Removal ¶ 3.)  Plaintiff seeks to remand the action to state court. Defendants, for their part, move to dismiss.

**II. Legal Standard**

A defendant may remove a case from state court to federal court if the case could have originally been filed in federal court.  28 U.S.C. § 1441(a).  The district courts have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different States.  28 U.S.C. § 1332(a)(1).  There is a "strong presumption" against removal and the Defendant has the burden of

1  establishing that removal is proper.  Gaus v. Miles, Inc., 980 F.2d

2  564, 566 (9th Cir. 1992).

3       Federal Rule of Civil Procedure 12(b)(2) provides that a court

4  may dismiss a suit for lack of personal jurisdiction.  The

5  plaintiff has the burden of establishing that jurisdiction exists.

6  See Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990).  Where,

7  as here, the motion is based on written materials rather than an

8  evidentiary hearing, "the plaintiff need only make a prima facie

9  showing of jurisdictional facts." Caruth v. International

10 Psychoanalytical Ass'n, 59 F.3d 126, 128 (9th Cir. 1977); Pebble

11 Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006).  "Although

12 the plaintiff cannot simply rest on the bare allegations of its

13 complaint, uncontroverted allegations in the complaint must be

14 taken as true." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d

15 797, 797 (9th Cir. 2004) (internal quotations and citation

16 omitted).  Conflicts between parties over statements contained in

17 affidavits must be resolved in the plaintiff's favor.  Id.

18      A complaint will survive a motion to dismiss when it contains

19 "sufficient factual matter, accepted as true, to state a claim to

20 relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S.

21 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,

22 570 (2007)).  When considering a Rule 12(b)(6) motion, a court must

23 "accept as true all allegations of material fact and must construe

24 those facts in the light most favorable to the plaintiff." Resnick

25 v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).  Although a complaint

26 need not include "detailed factual allegations," it must offer

27 "more than an unadorned, the-defendant-unlawfully-harmed-me

28 accusation." Iqbal, 556 U.S. at 678.  Conclusory allegations or

allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." Id. at 679.   In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted.   Id. at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Id. at 679.   Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." Twombly, 550 U.S. at 555. "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."   Iqbal, 556 U.S. at 679.

**III. Discussion**

A.   Remand

Plaintiff argues that this case should be remanded because the Complaint does not state facts sufficient to establish the parties' citizenship and because Defendants have failed to definitively state their own U.S. citizenship status.   Generally, "federal courts . . . do not limit their inquiry to the face of the Plaintiff's complaint, but rather consider the facts disclosed in the record of the case as a whole, in determining the propriety of removal."   14C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3734 (4th ed. 2015).   This is because diversity is a concern of federal courts, not state courts, so many

1  state court complaints omit the facts necessary to determine

2  diversity.  <u>Harris v. Bankers Life and Cas. Co.</u>, 425 F.3d 689, 693

3  (9th Cir. 2005).

4      The Ninth Circuit has held that a defendant is permitted to

5  remove an action to federal court "on the basis of its own

6  information." <u>Roth v. CHA Hollywood Medical Center, L.P.</u>, 720 F.3d

7  1121, 1125 (9th Cir. 2013).  Specifically, even if a Plaintiff does

8  not allege the citizenship of each Defendant in its complaint, this

9  "should not defeat removal if Defendant independently knows or

10 learns that information." <u>Id.</u> at 1125.  The Ninth Circuit also

11 held in <u>Harris</u> that if the complaint does not set forth grounds for

12 removal, and the Defendant chooses not to do its own research to

13 determine if the action is removable, then the action is not

14 removable at that point.  <u>Harris</u>, 425 F.3d at 694.  <u>Harris</u> does

15 not, however, prevent Defendants from voluntarily investigating to

16 determine whether removal is proper.  <u>Id.</u> at 694.  Thus, in

17 situations where the complaint does not allege facts sufficient to

18 support removal, a Defendant is permitted to do research and remove

19 the case to federal court, but is under no obligation to do so.

20 <u>Roth</u>, 720 F.3d at 1125.

21     Here, although Plaintiff's complaint does not contain

22 citizenship allegations, Defendants discovered the case was

23 removable from their own knowledge and investigation.  Plaintiff

24 Goodbreak does not dispute that it is a citizen of California.

25 Defendants state in signed declarations that of the seven named

26 defendants, five are citizens of New York, one is a citizen of

27 Singapore, and one is an entity that does not exist.  (Notice of

28 Removal p. 3; Weinraub Decl. ¶ 7, Dkt. No. 20-1.)  This court

1  assumes that Defendants' declarations are truthful, and Plaintiff

2  has provided no evidence to the contrary.[1]  Based upon these

3  statements, diversity jurisdiction exists among the parties and

4  this case is properly in federal court.[2]

5      B.   Personal Jurisdiction

6      Defendants Oliver, Weinraub, and Wollens (collectively, the

7  "individual Defendants") argue that this court does not have

8  personal jurisdiction over them.  District courts have the power to

9  exercise personal jurisdiction to the extent authorized by the law

10 of the state in which they sit.  Fed. R. Civ. P. 4(k)(1)(A);

11 Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir.

12 1998).  Because California's long-arm statute authorizes personal

13 jurisdiction coextensive with the Due Process Clause of the United

14 States Constitution, see Cal. Civ. Code § 410.10, this court may

15 exercise personal jurisdiction over a nonresident defendant when

16 that defendant has "at least 'minimum contacts' with the relevant

17 forum such that the exercise of jurisdiction 'does not offend

18 traditional notions of fair play and substantial justice.'"

19 Schwarzenegger, 374 F.3d at 800-01 (citing Int'l Shoe Co. v.

20 Washington, 326 U.S. 310, 316 (1945)).  The contacts must be of

21 such a quality and nature that the defendants could reasonably

22

23

---

24      [1] Plaintiff further alleges that Defendants Oliver, Weinraub

25 and Wollens' declarations are insufficient because they do not
   allege U.S. citizenship, a condition required for state

26 citizenship.  Again, this court assumes that Defendants' statements
   of citizenship are complete and truthful representations.

27      [2] Plaintiff is requesting at least $428,372.16, which is well

28 above the $75,000 required for diversity jurisdiction under 28
   U.S.C. § 1332(a)(1).

1  expect to be "haled into court there." <u>World-Wide Volkswagen v.</u>
2  <u>Woodson</u>, 444 U.S. 286, 297 (1980).

3          1. General Jurisdiction

4      Personal jurisdiction may be either general or specific.
5  <u>Gator.Com</u>, 341 F.3d at 1076.  "General jurisdiction exists when
6  there are substantial or continuous and systematic contacts with
7  the forum state, even if the cause of action is unrelated to those
8  contacts." <u>Id.</u>  "The standard for establishing general
9  jurisdiction is fairly high" <u>Id.</u> (citations omitted). "The
10 contacts with the forum state must be of a sort that approximate
11 physical presence." <u>Id.</u> "Factors to be taken into consideration are
12 whether the defendant makes sales, solicits or engages in business
13 in the state, serves the state's markets, designates an agent for
14 service of process, holds a license, or is incorporated there." <u>Id.</u>
15 at 1076-77 (citations omitted). The court focuses on "the economic
16 reality of the defendants' activities rather than a mechanical
17 checklist." <u>Id.</u> "Even if substantial, or continuous and systematic,
18 contacts exist, the assertion of general jurisdiction must be
19 reasonable." <u>Id.</u>

20     Here, the only contacts Plaintiff cites are the individual
21 Defendants' relationships to HBA and the fact that Plaintiff paid
22 money to Defendants' California-based accountant.  These facts are
23 nowhere near systematic enough to approximate physical presence.
24 <u>See</u> <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 131 S.Ct.
25 2846, 2853 (2011) ("For an individual, the paradigm forum for the
26 exercise of general jurisdiction is the individual's domicile . . .
27 .").
28 ///

2.   Specific Jurisdiction

Courts in the Ninth Circuit apply a three prong test to establish specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004.  The "plaintiff bears the burden of satisfying the first two prongs of the test." Id. "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." Id.

Plaintiff briefly argues that the first two prongs are satisfied because the individual Defendants "entered into contracts with plaintiff; registered two (2) limited liability companies in California; and paid plaintiff . . . using the services of an accountant located in Los Angeles." (Opposition at 5.)  However, "a contract alone does not automatically establish the requisite minimum contacts necessary for the exercise of personal jurisdiction." Gray & Co. v. Firstenberg Machinery Co., Inc., 913 F.2d 758, 760 (9th Cir. 1990) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985).  In a contractual dispute, the court must weigh additional factors such as course of dealings, choice of law provisions in the contract, and other factors not

1  addressed by Plaintiff.  See Baca Gardening and Landscaping, Inc.

2  v. Prizm Vinyl Corp., No. EDCV 08-1328-VAP, 2008 WL 4889030 at *4

3  (C.D. Cal. Nov. 12, 2008).  Nor is the receipt of payment in a

4  forum state alone sufficient to confer personal jurisdiction over

5  the sender.  See Fed. Deposit Ins. Corp. v. British-Am. Ins. Co.,

6  Ltd., 828 F.2d 1439, 1443 (9th Cir. 1987).

7      "The mere fact that a corporation is subject to local

8  jurisdiction does not necessarily mean its nonresident officers,

9  directors, agents, and employees are suable locally as well."

10  Allstar Marketing Group, LLC v. Your Store Online, LLC, 666

11  F.Supp.2d 1109, 1119 (C.D. Cal. 2009) (internal alteration,

12  quotation, and citation omitted).  Plaintiff contends, therefore,

13  that HBA is an alter ego of the individual Defendants.  See Mulato

14  v. Wells Fargo Bank, N.A., 76 F.Supp.3d 929, 945 (2014) (explaining

15  exceptions to fiduciary shield doctrine).  To invoke the alter ego

16  exception, Plaintiff must make a prima facie case "(1) that there

17  is such unity of interest and ownership that the separate

18  personalities of the two entities no longer exist and (2) that

19  failure to disregard their separate identities would result in

20  fraud or injustice."  Stewart v. Screen Gems-EMI Music, Inc., 81

21  F.Supp.3d 938, 954 (N.D. Cal. 2015) (internal quotations,

22  alterations, and citation omitted).

23      When examining unity of interest, courts looks to factors such

24  as the commingling of funds, use of the same offices or personnel,

25  and lack of separate records.  Id.  The second prong's injustice

26  requirement generally requires some evidence of bad-faith.  See

27  Pacific Maritime Freight, Inc. v. Foster, No. 10-cv-0578-BTM-BLM,

28  2010 WL 3339432 at *7 (S.D. Cal. Aug. 24, 2010).  Here, the

Complaint does no more than allege the individual Defendants'
relationship to HBA and conclusorily assert that the alter ego
factors are satisfied, with no supporting factual allegations.
(Compl. ¶ 13.) Absent a prima facie case for alter ego liability,
the exception does not apply. HBA's acts and contacts cannot be
attributed to the individual Defendants.

Because there is no other basis for specific jurisdiction over
the individual Defendants, their motion to dismiss for lack of
personal jurisdiction is granted.

C. HBA's 12(b)(6) Motion

HBA moves to dismiss several of Plaintiff's substantive
claims.

1. Fraud and Negligent Misrepresentation

HBA argues that Plaintiff's fraud and negligent
misrepresentation claims are duplicative of breach of contract
claim. "The economic loss rule generally bars tort claims for
contract breaches, thereby limiting contracting parties to contract
damages." United Guar. Mortg. Indem. Co. v. Countrywide Fin.
Corp., 660 F.Supp.2d 1163, 1180 (C.D. Cal. 2009). "[C]onduct
amounting to a breach of conduct becomes tortious when it also
violates a duty independent of the contract arising from principles
of tort law." Robinson Helicopter Co. v. Dana Corp., 34 Cal. 4th
979, 998 (2004) (internal quotation and citation omitted). Here,
Plaintiff does not identify any duty HBA owed to Goodbreak, other
than the alleged contractual duty. Plaintiff's fraud and negligent
misrepresentation claims are, therefore, dismissed.

///

///

1          2.   Intentional Interference

2       A claim for intentional interference with contractual

3  relations requires "(1) a valid contract between plaintiff and a

4  third party; (2) defendant's knowledge of this contract; (3)

5  defendant's intentional acts designed to induce a breach or

6  disruption of the contractual relationship; (4) actual breach or

7  disruption . . ., and (5) resulting damage." Quelimane Co., Inc.

8  v. Stewart Title Guaranty Co., 19 Cal.4th 26, 55 (1998).

9       HBA argues that the Complaint does not plead sufficient facts

10 to sustain an intentional interference claim.  The court agrees.

11 Although the Complaint makes reference to "agreements with third

12 parties" and alleges that Defendants "hijacked plaintiff's

13 manufacturers," there is neither any indication of the identities

14 of those third party manufacturers nor any allegation regarding the

15 contractual right or rights with which Defendants allegedly

16 interfered.  Although Plaintiff's opposition includes the name of

17 one manufacturer, that manufacturer is not named in the Complaint,

18 which refers to several, rather than one, Chinese manufacturer.

19 Defendants cannot be expected to defend against such vague

20 allegations.  See, e.g. UMG Recordings, Inc. v. Global Eagle

21 Entm't, Inc., – F.Supp.3d –, 2015 WL 4606077 at *15 (C.D. Cal.

22 2015).

23          3.   Remaining Claims

24      Having dismissed Plaintiff's intentional interference claim,

25 the court also dismisses Plaintiff's claims for the breach of the

26 UCL and of the implied covenant of good faith and fair dealing.

27 Plaintiff argues that its implied covenant claim is not duplicative

28 of its breach of contract claim because it is based upon

1    Plaintiff's "reasonable expectation to not have HBA disrupt

2    Goodbreak's contract with the manufacturer."  (Opp. at 10.)   In

3    other words, Plaintiff's implied covenant claim is based upon its

4    now-dismissed intentional interference claim.[3]

5         As for the UCL claim, Plaintiff's Opposition makes reference

6    to both the unlawful and unfairness prongs of California's Unfair

7    Competition Law.  Cal. Business & Professions Code § 17200.  As an

8    initial matter, however, the Complaint identifies only unfair, not

9    any allegedly unlawful, business practice.  (Compl. ¶¶ 74-76.)

10   Second, the unlawful practice to which Plaintiff refers is the

11   alleged intentional interference claim, which is deficient for the

12   reasons discussed above.  Lastly, an "unfair" practice is one "that

13   threatens an incipient violation of an antitrust law, or violates

14   the policy or spirit of one of those laws . . ., or otherwise

15   significantly threatens or harms competition."  Cel-Tech Commc'ns,

16   Inc. v. Los Angeles Cellular Tel. Co., 20 Cal.4th 163, 187 (1999).

17   Plaintiff makes no attempt to demonstrate how the conduct alleged

18   meets this definition.

19   **IV. CONCLUSION**

20        For the reasons stated above, Plaintiff's motion to remand is

21   DENIED.  The individual Defendants' Motion to Dismiss for Lack of

22   Personal Jurisdiction is GRANTED.  HBA's Motion to Dismiss

23   Plaintiff's fraud and negligent misrepresentation, intentional

24   interference, implied covenant, and UCL claims is GRANTED.  Those

25   _____

26        [3]  Although Plaintiff's opposition devotes two sentences to
     the argument that the breach of implied covenant claim is based
27   upon Defendants' complaints about the items provided by Plaintiff,
     it is unclear to the court how such complaints implicate the terms
28   of the alleged contract.

claims, and all claims against the individual Defendants, are
DISMISSED, with leave to amend.  Any amended complaint shall be
filed within fourteen days of the date of this Order.

IT IS SO ORDERED.

Dated: January 12, 2016

DEAN D. PREGERSON
United States District Judge